IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 14-047 |
| | ) | |
| vs. | ) | |
| | ) | Judge Maurice B. Cohill, Jr. |
| JOSEPH SAVAGE, | ) | |
| | ) | |
| Defendant | ) | |

**SENTENCING MEMORANDUM OF**
**DEFENDANT JOSEPH SAVAGE**

COMES NOW, Defendant Joseph Savage, by his lawyer Jon Pushinsky, and submits the following Memorandum with respect to his position regarding sentencing factors and the determination of an appropriate sentence:

**I.    ISSUE**

1.    The primary issue to be decided at sentencing is how much more than 15-months of a stipulated 30-month sentence are to run concurrently with a state court sentence that, in all likelihood, will keep Mr. Savage incarcerated in the state system until August 2037.

2.    Mr. Savage maintains that his entire federal sentence should run concurrently with his state sentence.

**II.    INTRODUCTION**

3.    Defendant Joseph Savage is a 35-year-old lifelong resident of Western Pennsylvania (PIR ¶ 40).[1]

---

[1] The abbreviation "PIR" refers to the Presentence Investigation Report.

1

4.      On March 11, 2015, Mr. Savage pleaded guilty to a two-count indictment charging him with threatening the President and immediate members of the President's family (PIR ¶ 1).

5.      The threats giving rise to this case were communicated by way of a single October 2012 letter sent to the White House by Mr. Savage while he was incarcerated in connection with an unrelated state court case (PIR ¶ 11).

6.      Due to his incarceration in a state correctional facility, Mr. Savage had no means or ability to act upon the threats contained in his letter to the President.

7.      Mr. Savage will not be released from state custody for many years. He was sentenced by the Court of Common Pleas of Fayette County to a term of imprisonment of 10-20-years on January 8, 2013 after pleading *nolo contendre* to a charge of indecent assault on a minor (PIR ¶ 33). He was also sentenced that same day to a consecutive sentence of 2 ½ -5-years on another charge (PIR ¶ 35).

8.      According to the Pennsylvania Department of Corrections records reviewed by defense counsel, Mr. Savage will not complete the minimum portion of his sentence until February 5, 2025. If Mr. Savage serves his maximum sentence, which is likely given his criminal history, he will not be released until August 5, 2037. Thus, Mr. Savage's inability to act on any threat against the President and his family will continue for years to come and extend well beyond the President's term of office, which will expire in January 2017.

9.      Mr. Savage has acknowledged and accepted responsibility for his unlawful conduct by voluntarily entering guilty pleas to both counts of the indictment.

10. According to the Guidelines' calculations contained in the PIR, Mr. Savage is subject to a total offense level of 12 (PIR ¶¶ 7, 27) and a criminal history category of VI (PIR ¶¶ 8, 36).

11. With an offense level of 12 and a criminal history category of VI, the U.S.S.G. advisory sentencing range is 30-37 months (PIR ¶¶ 8, 53).

12. According to the plea agreement entered into by Mr. Savage and the U.S. Attorney, as well as Fed.R.Crim.P. 11(c)(1)(C), Mr. Savage is to receive a 30-month sentence (PIR ¶¶ 9, 54), which is at the low end of the applicable Guidelines range.

13. The parties have further stipulated that at least 15-months of the 30-month sentence are to run concurrently with Mr. Savage's lengthy state prison sentence (PIR ¶¶ 9, 54).

14. Given that the court has acknowledged its acceptance of the plea agreement, the key issue of likely dispute at sentencing is whether any more of the agreed upon 15-months of Mr. Savage's sentence will run concurrently with his state incarceration and, if so, how much more.

### III.   DISCUSSION OF STANDARD SENTENCING CONSIDERATIONS

15. To resolve the issue presented by Mr. Savage's sentencing, the court is required to independently evaluate the factors identified in 18 U.S.C. § 3553(a) and craft a sentence that is appropriate in light of the particular circumstances presented by the case. *Gall v. U.S.,* 552 U.S. 38 (2007). A sentence satisfying the goals identified in § 3553(a) may be imposed even if inconsistent with either the sentence advocated by the Government or the Guidelines.

16. The § 3553(a) factors that must be considered by the court include: the nature and circumstances of the offense, the history and personal characteristics of the defendant, protection of the public, the need to deter a defendant from committing future crimes, the need for the sentence imposed, the kinds of sentences available, the advisory guideline range, pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need for restitution.

17. The district court's exercise of discretion in sentencing must also reflect the statutory admonition that sentences be "'sufficient, but not greater than necessary' to accomplish the goals of sentencing . . . ." 18 U.S.C. § 3553(a); *Kimbrough v. U.S.,* 552 U.S. 85, 101 (2007).

18. Consideration of the relevant sentencing factors and the particular circumstances presented by this case leads to the conclusion that an appropriate sentence is one that, in its entirety, runs concurrently with Mr. Savage's state sentence.

    A.  NATURE AND CIRCUMSTANCES OF OFFENSE

19. Mr. Savage admits to having sent a letter to the White House threatening President Obama and his family while he was incarcerated by the Commonwealth of Pennsylvania (PIR ¶¶ 11-13).

20. Mr. Savage's letter was graphic in its terms but, as noted in ¶¶ 6-8, *supra*, he did not have and will continue not to have the means, ability or opportunity to harm either the President or his family.

21. There is no indication in any of the documents made available to defense counsel that either President Obama or any member of his family became aware of or were affected by Mr. Savage's ill advised letter (*See,* PIR ¶ 14).

### B. MR. SAVAGE'S PERSONAL SITUATION

22. Mr. Savage's formative years were marked by unimaginable abuse and horror.

23. As a child, Mr. Savage was exposed to his alcoholic father's routine violent abuse of his mother. This abuse included the very yong Mr. Savage awakening one night to find his father holding a machete to his mother's throat (PIR ¶ 41).

24. Beginning at a young age, Mr. Savage, who would often intervene in aid of his mother, also became a victim of his father's rage. During the PIR interview, Mr. Savage related that his father "beat the living crap out of him" by the time he was about 6-years-old. He was beaten four to five days a week with fists and belts. During one incident, his father punched him in the head hard enough to permanently damage his hearing (PIR ¶ 41). On another occasion, Mr. Savage's father threw him out of a second floor window (PIR ¶ 41). Mr. Savage sustained a broken collar bone from the fall (PIR ¶ 41). Although CYS was called to the home, Mr. Savage was not removed from the house until he was about 13.

25. By the time he was 10-years-old, Mr. Savage had been initiated into the world of drug and alcohol abuse by his father. (PIR ¶ 41). Mr. Savage continues to become teary at thoughts of his father, who he believes "destroyed his life" (PIR ¶ 42).

26. Mr. Savage has spent the majority of his life behind bars (PIR ¶ 42). He has been diagnosed as suffering from PTSD, major depression, polysubstance abuse, ADHD and bi-polar disorder (PIR ¶¶ 45-46). When confined at SCI Rockview, he was housed in that facility's mental health unit (PIR ¶ 46). He was hospitalized at WPIC in 2008 after trying to commit suicide while at a Renewal, Inc. halfway house (PIR ¶ 47).

27. In terms of education, Mr. Savage earned a GED while in juvenile detention and has earned some college credits at Penn State's Fayette Campus (PIR ¶ 49). He has no employment history (PIR ¶ 50).

28. Mr. Savage has no contact with his parents or siblings (PIR ¶ 41). He has never been married and has no children (PIR ¶ 43).

      **C.**     **A FEDERAL SENTENCE THAT IS CONCURRENT WITH MR. SAVAGE'S STATE SENTENCE IN ITS ENTIRETY WOULD BE APPROPRIATE IN THAT IT WOULD REFLECT THE SERIOUSNESS OF THE CRIME, PROMOTE RESPECT FOR LAW AND PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

29. Mr. Savage is likely to remain in prison for the next twenty years regardless of what this court does. What is to be gained by tacking another 15-months onto the end of his already lengthy sentence for one impulsive letter? Mr. Savage's background indicates the need for intensive rehabilitation, not additional punishment. This is especially true in that, given Mr. Savage's imprisonment, the letter to President Obama is more properly viewed as pointless ranting than a true threat. There is no reason to believe here that the imposition of a concurrent sentence would fail to satisfy legitimate sentencing considerations. The continued monitoring of Mr. Savage's conduct following his incarceration is guaranteed by the 18-months of supervised release he will have to serve upon his release from custody (PIR ¶ 9). Respect for the law is more likely to be fostered by a sentence that promotes future law-abiding conduct on the part of this damaged individual than one which is viewed as overly punitive, especially given the current

nationwide concern over the high rate and excessive length of incarceration in the federal criminal justice system.

30. Attorney General Holder, in last year's address to the ABA, stated that "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." Http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html. The Attorney General further noted, based on available data and trends, that "widespread incarceration at the federal, state and local levels is both ineffective and unsustainable." *Id*.

31. The increase in the federal prison population has far outstripped the growth of the nation's general population; the federal prison population has grown by almost 800 percent since 1980 and whereas the United States accounts for a mere 5 percent of the world's population, it houses approximately 25 percent of the world's prisoners. *Id*.

32. Overly long sentences exacerbate the problems faced by ex-offenders upon their release from prison and are not consistent with the best interests of the communities to which the ex-offenders return:

> When the defendants are released from prison, they will probably have to return to all of the problems that led them to engage in crime. Whatever tenuous connection they retain to the lawful, supportive world will likely be diminished after years of forced separation in prison. Incarceration will make entry into the job market more difficult. Remaining will be the root problems that have largely brought them to this pass: poverty; dysfunctional families; mental and physical problems; legal and *de facto* housing segregation; segregated and inferior schools; and an economy that appears to have little need or concern for low- and semi-skilled workers. Such individuals constitute a permanent underclass with almost no opportunity to achieve economic stability, let alone the American dream of upward mobility.

*U.S. v. Bannister,* 2011 WL 1113591, *68.

33.     There would not be an unwarranted sentencing disparity should Mr. Savage be given a fully concurrent sentence.  He is likely to remain in custody for the next 20-years, even in the absence of a federal sentence.  What more is to be gained by imprisoning Mr. Savage for an additional 15-months after the completion of his state sentence sometime around 2035 for a single letter written in 2012?

34.     Respect for the law is further advanced here by the fact that Mr. Savage will be subject to a term of supervision following his release from prison, during which a program of intensive mental health services can be provided.  This supervision provides an added dimension of protection for society and a check on any inclination Mr. Savage might have to stray from lawful behavior.

### III.     RECOMMENDATIONS

35.     For all of the foregoing reasons, Mr. Savage requests that the entire incarceration component of his sentence run concurrently with his state sentence.

36.     A recommendation for counseling, treatment for depression and vocational programming is also requested either during Mr. Savage's incarceration and/or while he is on supervised release.

37.     There is a $200.00 special assessment.

38.     The imposition of a fine would be inappropriate in light of Mr. Savage's financial situation.

        Respectfully submitted,

        <u>S/ Jon Pushinsky</u>
        Jon Pushinsky
        Pa. I.D. No. 30434
        1808 Law and Finance Building
        429 Fourth Avenue
        Pittsburgh, PA 15219
        (412) 281-6800

        Lawyer for Defendant